HENRY HUDSON

*vs.*

CHARLES P. WEBBER, JOHN P. WEBBER AND JOHN P. WEBBER, JR.

Piscataquis.    Opinion November 17, 1908.

*Deeds.  Certificate of Acknowledgment.  Venue.  Recorded Deed.  Unsealed Deed.
Records.  Erasures.  Presumptions.  Judicial Notice.  Township.  Quar-
ters.  Acreage Shrinkage.  Partition Proceedings.  Evidence.  Statute,
1831, chapter 36.  Revised Statutes, chapter 75, section 26; chapter
84, section 125 ; chapter 106, section 10.*

1.  An office copy of a deed, the original of which was unacknowledged, or
without proper acknowledgment, is invalid and inadmissible against third
parties; and whether the original deed was properly acknowledged, not
only in form, but before a magistrate having jurisdiction, must appear
upon the copy itself, when offered as evidence.

2.  A certificate of acknowledgment is insufficient when the place or venue
where it was taken is not disclosed.

3.  It is not indispensable that the place of acknowledgment should appear
from the certificate alone.  It will suffice if it can be discovered with rea-
sonable certainty by inspection of the whole instrument.

4.  Where the venue was laid in the certificate of acknowledgment as,
" Suffolk ss. Boston," and the grantor was described in the deed as resid-
ing in " Waltham, in the County of Middlesex and Commonwealth of
Massachusetts," and the grantee as of " Boston in the County of Suffolk
and commohwealth aforesaid," it sufficiently appears that the acknowl-
edgment was taken in the County of Suffolk and Commonwealth of Massa-
chusetts.

5.  Where the venue in a certificate of acknowledgment was laid merely as
" Suffolk ss." and one of the parties was described as living in Waltham,
.Massachusetts, it was *held* that the court may properly hold that the
acknowledgment was taken in the County of Suffolk in Massachusetts.

6.  This court takes judicial notice of the fact that there is a Suffolk County
in Massachusetts, because it was created by laws which were in force in the
District of Maine as well as in the mother commonwealth.

7.  When a deed and its record have stood unchallenged for more than
seventy years, and many conveyances have been based upon them, it

may be presumed from the lapse of time that the magistrate taking the acknowledgment acted within his jurisdiction, and that the deed was properly acknowledged, and hence that it was properly recorded. And an office copy of it is admissible in evidence.

8. A deed recorded does not take priority over another deed of the same premises, earlier in date, but recorded later, unless it appears by the record to have been a sealed instrument. The record is evidence only of what appears upon it.

9. It is to be presumed that all entries or erasures in a book of official records are made by the proper recording officer, at the time of making the record, in the absence of evidence to the contrary.

10. In the case at bar, the record of the deed from Hobbs to Bascomb does not disclose affirmatively that the original deed was sealed, notwithstanding the statement in the testimonium clause that it was sealed. But whether it was sealed or not, it was not recorded as a sealed instrument, and did not take priority over a sealed instrument recorded later.

11. When lines established by partition proceedings are referred to in the declaration in a real action as the boundaries of one or more sides of the demanded premises, the returns of the partition commissioners are admissible, as against the plaintiff, to show the length of the lines, and the consequent dimensions of the land divided, and of the separate parcels bounded by these lines.

12. When the owner of a tract of land conveyed definite numbers of acres in common and undivided to several grantees successively, and it now appears that the entire acreage of the tract was not sufficient to satisfy all the grants in full, the shrinkage falls upon the last grantee.

13. The predecessors in title to the parties in the case at bar owned one quarter of a township in common and undivided. They owned it, not in fractional parts, but by acreages varying in amount. As the result of partition proceedings, and presumably in consequence of the unequal values of different sections of the township, their quarter as set off was smaller territorially than the other quarters, and smaller than their combined acreages, based upon the size of a full quarter. *Held:* That the shrinkage caused by the partitions must be borne by the owners of that quarter in proportion of their holdings at the time of the partitions.

14. In the case at bar, the court finds that the actual area of the entire township was 21,716 5-8 acres, of which after deducting the public lots, one quarter was 5,189 5-32 acres, and that the actual area of the quarter set off to the predecessors of these parties was 5,002 2-5 acres. Upon the basis of a full quarter, the plaintiff would be entitled to 1,829 5-32 acres. But in consequence of the shrinkage caused by the partition proceedings, the plaintiff's acreage must be reduced by the ratio that 5,189 3-32 bears to 5,002 2-5.

On report.　Judgment for plaintiff.

Real action to recover one-half part in common and undivided of a certain parcel of land in Township No. 5, Range 9, north of Waldo Patent, Piscataquis County.　Plea, the general issue with disclaimer as to part of the demanded premises.

Tried at the September term, 1906, Supreme Judicial Court, Piscataquis County.　At the conclusion of the evidence it was agreed that upon so much of the "evidence as is competent and legally admissible," the case should be reported to the Law Court for decision.

The case appears in the opinion.

*Frank E. Guernsey, and Hudson & Hudson,* for plaintiff.

*F. H. Appleton and Hugh R. Chaplin, and J. B. & F. C. Peaks,* for defendants.

SITTING: EMERY, C. J., SAVAGE, PEABODY, CORNISH, KING, BIRD, JJ.

SAVAGE, J.　Writ of entry to recover one-half part in common and undivided of a parcel of land in township number 5, range 9, north of Waldo Patent, in Piscataquis County.　The defendants have pleaded the general issue, with a disclaimer as to part.　The case comes up on report.　We need notice only such questions as have been controverted in argument.　It is incumbent on the plaintiff to show some title, and the defendants deny that he has any title. This raises the first question.　But if the plaintiff has a title, it is admitted in argument, on the assumption that the township was six miles square, as stated in the earliest deeds, and that a quarter, less public lands, was 5520 acres, that the plaintiff owns 880 acres in common and undivided, while he claims 2160 acres.　And this presents the second issue.　The plaintiff in his writ claims an undivided half, but he will be entitled to judgment for so much as he shows title to, less than one-half.　R. S., chap. 106, sect. 10. The defendants are admittedly the owners of at least one undivided half of the parcel.

The township was conveyed by the city of Boston to Samuel Thatcher in 1833; Thatcher gave a deed of a quarter of it to George Miller in 1835: in the same year, Miller gave a deed of

the same to Luther Billings, under whom the plaintiff claims. In proof of the last two of these links in his chain of title the plaintiff introduced against the defendant's objection, attested copies of the deeds from the registry of deeds, commonly called office copies. The objection made is that the certificate of acknowledgment fails to show where, that is, in what State, the acknowledgment was taken. It is claimed that a deed must be properly acknowledged before it can be recorded, R. S., chap. 75, sect. 26, and that an office copy of an unauthorized record is not admissible in evidence under R. S., chap. 84, sect. 125, which provides that office copies may be used in certain cases where the original deeds would be admissible. It is claimed further that the place of the acknowledgment must appear on the deed to entitle it to be recorded. In one deed, dated February 11, 1835, and recorded March 10, 1835, the venue of the acknowledgment appears on the certificate merely, "Suffolk ss; Feby 19th 1835." In the other deed dated September 10, 1835, and recorded November 16, 1835, it is "Suffolk ss; Boston, Oct. 12, 1835."

An original unacknowledged deed, or deed with defective certificate of acknowledgment is valid and admissible in evidence as against the grantor and his heirs. But if not properly acknowledged and recorded it is not valid or admissible, so far as this case is concerned, except as against the grantor and his heirs. Such was the law when these deeds were executed. Public Laws of 1821, chap. 36.

It will be seen that the statute, R. S., ch. 84, sect. 125, above cited, which permits the use of office copies, limits their admissibility to cases where original deeds would be admissible. Since an original deed, unacknowledged, or without proper acknowledgment, is invalid and inadmissible against third parties, an office copy of the same is not admissible. Whether the deed was properly acknowledged, not only in form, but before a magistrate having jurisdiction, we think must appear upon the copy itself, when an office copy is offered.

It seems to have been held wherever the question has arisen, and we think properly, that a certificate of acknowledgment is insufficient

when it does not disclose the place or venue where it was taken. For a magistrate has no authority to take acknowledgments outside the State, within and for which he is appointed. It must appear that he acted within the territorial limits of his jurisdiction. A deed which does not show this fact is not admissible except as against the grantor and his heirs. *Brooks* v. *Chaplin*, 3 Vt. 281 ; *Ives* v. *Allen*, 12 Vt. 589 ; *Vance* v. *Schuyler*, 6 Ill. 164; *Hardin* v. *Kirk*, 49 Ill. 153 ; *Hardin* v. *Osborne*, 60 Ill. 96 ; 1 Cyc. 572, and cases cited. The case of *Elliott* v. *Peirsol*, 1 Pet. 328, is cited by counsel as being to the contrary. The certificate in that case was like the ones in the case at bar. It was attacked on other grounds, but not on the one we are now examining, and this point was not considered by the court. So we do not regard this case as authority.

When the venue of acknowledgment appears upon the deed, the law attaches to the acts of the officer the presumption of regularity. But it is not indispensable that it should appear from the certificate of acknowledgment itself. It will suffice if the place of acknowledgment can be discovered with reasonable certainty by inspection of the whole instrument, *Hardin* v. *Osborne*, supra; *Brooks* v. *Chaplin*, supra; *Fuhrman* v. *London*, 13 Serg. & Rawle, 386. In *Brooks* v. *Chaplin*, supra, the grantor described himself in the deed as residing in "Suffield, County of Hartford and State of Connecticut," and the certificate showed that the acknowledgment was taken in "Hartford County," but no State was named. The court by inferences based on the stated residence of the grantor and upon other facts shown by the deed, found that it was "Hartford County, Connecticut," and held the acknowledgment good. In *Hardin* v. *Osborne*, where the certificate contained the words "County of New York," without any State named, the court held the acknowledgment good, it appearing in the certificate of the authority of the officer who took the acknowledgment, which was attached to the certificate of acknowledgment, that he was at the time of taking it a commissioner of deeds for the city, county and State of New York.

VOL. CIV 28

One of the copies before us presents no real difficulty. The venue of the certificate is "Suffolk ss; Boston." The grantor is described in the body of the deed as of "Waltham in the county of Middlesex and commonwealth of Massachusetts," and the grantee as of "Boston in the county of Suffolk and commonwealth aforesaid." We think this sufficiently shows that the acknowledgment was taken in the county of Suffolk and commonwealth of Massachusetts. In the other copy the venue appears merely as "Suffolk ss." The plaintiff claims that this refers to Suffolk County, Massachusetts. We think we may take judicial notice of the fact that there is a Suffolk County in Massachusetts. It is true that courts do not generally take judicial notice of the territorial subdivisions of other States into counties, and towns, although they sometimes do of the location of the great commercial centers, like Boston, New York and Chicago. But Suffolk County was created while this State was yet a part of Massachusetts. It was created by laws which were in force in the District of Maine as well as in the mother commonwealth, by laws which were ours as well as hers, and are ours still. We know of our own territorial subdivisions because we take judicial notice of the laws which made them, though the laws may have been enacted long before Maine became a State. We see no good reason why we should not judicially know the creation of Suffolk county in Massachusetts, as well as of York county in Maine, which was created long before the Act of Separation.

The difficulty here is not in knowing judicially that there is a Suffolk county in Massachusetts, but in ascertaining whether that Suffolk county is the one where this deed was acknowledged. There are, or may be, other Suffolk counties. It appears that one of the parties, the grantee, lived in Waltham, Massachusetts, within the territory of which Boston in Suffolk County was then as now the business and commercial center. This fact has slight probative force, but it has some. Prima facie, it leads us to think that the deed was acknowledged in that Suffolk County which is in Massachusetts, rather than in any other one.

But there is another ground upon which we think a conclusion that the deed was properly acknowledged can be based. This deed

and its record have stood unchallenged for more than seventy years. Upon them many conveyances have been based. And we think a presumption may arise from the lapse of time that the magistrate acted within his jurisdiction and that the deed was properly acknowledged. Such a presumption is to be favored in proper cases, since it tends to quiet title, after all witnesses have died, and all other means of establishing it have been lost or destroyed. *Bucklen* v *Hasterlik,* 155 Ill. 423. And as, in such case, the deed is to be taken, as properly acknowledged, it must also be taken as properly recorded. Hence we conclude that the deed was properly acknowledged and recorded, and that the office copy of it was admissible.

We now pass on in the plaintiff's chain of title. Whatever interest remained in Billings it is conceded has since come to the plaintiff. Billings owning a quarter of the township sold July 1, 1837, 4500 acres to William Hobbs and 500 acres to Jonathan Weeks. Upon the assumption stated, that the township was six miles square, Billings had 520 acres left, and it is conceded that the title to these has come to the plaintiff. Hobbs out of his 4500 acres conveyed 2760 to Francis Bowman in 1837, which have come to the defendant, and 1000 to Daniel W. Bradley, in 1838, which have come to the plaintiff, unless the Bradley deed was rendered inoperative in part by a conveyance of 1380 acres to one Bascomb, by a deed which was made later than the Bradley deed, but recorded earlier. After the conveyance to Bowman, Hobbs had only 1740 acres left, and this would not satisfy both the Bradley and Bascomb deeds, as they together called for 2380 acres.

The defendants claim that the Bascomb deed had priority by reason of its being recorded earlier. On the other hand, the plaintiff contends that the Bascomb was not sealed, and, therefore, that it was never effective as a deed, because a seal is essential to the conveyance of real property. *McLaughlin* v. *Randall,* 66 Maine, 226. The proof offered of the Bascomb deed is an office copy. We have also examined, as the parties stipulated, the book of records. Upon the record there are no letters or words or characters to indicate the place of seal. There is an erasure where the place of the seal should be, and through it is drawn a horizontal

line. There is still discernible, notwithstanding the erasure, a faint trace of a mark or letter, which may have been the letter "L."

In this situation the defendants contend in the first place that when an original deed cannot be produced, a copy from the records which recites that it is sealed, although no seal appears, raises a presumption that the original was sealed. 25 Am. & Eng. Ency. of Law, 2nd Ed. 78, and cases cited. It should be observed however that in some of these cases much importance seems to have been attached to the fact that the statutes did not require the place of seal to be indicated upon the record. *LeFranc* v. *Richmond*, 5 Sawy. 601 ; *Starkweather* v. *Martin*, 28 Mich. 470. It seems to us rather that a deed is not properly recorded unless the place of seal is also indicated. A seal is an essential part of a deed. The record is not complete unless the seal is recorded. Further it is claimed that lapse of time will raise the presumption of sealing. But it is unnecessary to examine these claims at greater length, for they do not reach the difficulty in this case. The Bascomb deed is set up as having priority over the Bradley deed, by reason of its being recorded earlier. If the earlier record disclosed a conveyance, it was good against an earlier deed, recorded later ; otherwise not. So the question is, not whether the Bascomb deed was originally sealed, but whether the record disclosed that it was sealed. If by the record it did not appear to be a sealed instrument it did not take priority. A record is notice only of what appears upon it. The language of the court in *Todd* v. *Union Dime Savings Inst.*, 118 N. Y. 337, is directly in point :—"The record, to be effectual as evidence of the conveyance of the legal title to the property mentioned in it, must in some manner represent that the instrument was sealed. The record as first made did not have any mark of the seal of the grantor upon it, and was, therefore, ineffectual evidence of the conveyance of such title to the premises. Was it as evidence any more comprehensive in its effect than that? The record of a conveyance is by the statute made admissible as evidence, and its admissibility as such is to prove a conveyance so far as its legal import is to that effect, and to that extent it also has the character of notice to subsequent purchasers."

We think the record of the Bascomb deed does not disclose affirmatively that the original deed was sealed, notwithstanding the statement in the testimonium clause that it was sealed.    It is not a case of an omission merely of any reference to a seal.    It seems to us apparent that the recording officer or clerk wrote or began to write something to indicate that the instrument was sealed.    Then at some time the writing was erased,    The defendants urge that the inference proper to be drawn is that the deed was first recorded by the proper officer or clerk as a sealed deed, and that afterwards the mark for a seal was erased by some other hand, perhaps by an interested party.    But we think the presumption is that all entries or erasures in a book of official records are made by the proper recording officer, at the time of making the record, in the absence of evidence to the contrary.  The inference which we believe would suggest itself to reasonable minds as quickly as any is that the copyist began to write characters for the place of seal automatically, from force of habit, and then having noticed that there was no seal, erased the marks that had been made.    Since, then, it is not made to appear that the Bascomb deed was recorded as sealed, it did not gain priority over the Bradley deed, even if it had been in fact sealed.    And so the Bradley title to 1000 acres has come to the plaintiff.

The plaintiff also claims title to 640 acres additional, in this way ;—that Hobbs had 4500 acres ; that he sold by valid conveyances 2760 acres to Bowman, 1000 to Bradley, and 100 to one MacKay, 3860 acres in all ; that he still held, so far as the record shows, the legal title to what was left, which was 640 acres, notwithstanding the Bascomb deed, so called ; that after his death, all the interest he had had in the premises was conveyed by his heirs to the plaintiff.    We think the evidence sustains this claim.    So that the case shows that the plaintiff has 2160 acres in all.

So far we have proceeded upon the assumption that the estimates of the size of the township found in the early deeds, and which the succeeding owners acted upon, were correct, and that the Billings quarter amounted to 5520 acres in common and undivided.    But it is contended by the defendants that the township was less than six

miles square, and that the effect of two partitions made in 1844 and 1850 was to confine the Billings acreage to one territorial quarter of the township, which quarter was smaller in area than the others, but presumably not in value.

No survey of the township was made for use in this case.

But the plaintiff in his writ described the parcel of which the demanded acres are a part as bounded on the west and south sides by lines established by the partition proceedings referred to. Those proceedings were introduced in evidence by the plaintiff. They show that the west half of the township was set off in 1844 to Edward Smith, owner of an undivided half, the line of partition being described substantially as two and one-half miles east from and parallel with the west line of the township and six miles and twelve rods long north and south ;. and that the south half of the east half was set off in 1850 to Preserved B. Mills, who owned an undivided half of that half, the division line being described substantially as three miles and one hundred and forty rods from and parallel with the south line of the township, and three miles and two rods in length, east and west. There is no doubt that the effect of these partitions was to confine the Billings quarter acreage to the northeast corner of the township, bounded west by land of Smith and south by land of Mills.

If the distances stated in the returns of the partition commissioners are correct, and if the returns are admissible to show it, it appears that the township was actually six miles and twelve rods long, north and south, and only five miles and one hundred and sixty-two rods wide, east and west, and contained all told 21,716 5-8 acres, one quarter of which after deducting the acreage of the public lands would be 5189 5-32 acres. This last amount, then, represents the Billings quarter before any partition proceedings were had. But by the partition proceedings, in consequence, no doubt, of the unequal values of different sections of the township, the Billings quarter was limited to a rectangular section two miles and one hundred and ninety-two rods, north and south, and three miles and two rods, east and west, containing 5002 2-5 acres. We think these returns are admissible and should be considered by us upon

the question of quantity of land. They are admissible, if for no other reason, because the plaintiff in his writ has made the lines established by them his boundaries. They are all the evidence we have, and are much more satisfactory than the "more or less" estimates in the old deeds.

Here then are two shrinkages of the Billings quarter, the first reduction from 5520 to 5189 5-32 acres, because the township was actually smaller than it was estimated, and the second from 5189 5-32 to 5002 2-5 acres, in consequence of the partition proceedings. It becomes necessary to recast the amount of the plaintiff's holdings. The Bradley 1000 acres and the Hobbs 640 acres, which have come to the plaintiff, are not affected by the first shrinkage. But the Billings residue, after his sale to Hobbs and Weeks, is affected. Billings in 1837 owned actually 5189 5-32 acres instead of 5520. He sold 5000 acres to Hobbs and Weeks, and had left only 189 5-32 acres, which have come to the plaintiff, instead of 520. So that prior to the partition proceedings the titles which have come to the plaintiff covered only 1829 5-32 acres.

The shrinkage in acreage caused by the partitions must be borne proportionably by the owners of the Billings quarter. The plaintiff's acreage of 1829 5-32 acres must be reduced by the same ratio that 5189 5-32 bears to 5002 2-5. Or stating it as it should be in fractional parts, the plaintiff is entitled to judgment for 1763.3-5002.4 parts of the parcel described in his writ.

*Judgment for plaintiff accordingly.*